**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000396
27-MAR-2025
08:41 AM
Dkt. 71 SO**

NO. CAAP-21-0000396

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KEEP THE NORTH SHORE COUNTRY, a nonprofit corporation,
and KAHUKU COMMUNITY ASSOCIATION, a nonprofit corporation
Plaintiffs-Appellants-Appellants,
v.
ZONING BOARD OF APPEALS, City and County of Honolulu;
DIRECTOR OF THE DEPARTMENT OF PLANNING AND PERMITTING,
City and County of Honolulu, NA PUA MAKANI POWER PARTNERS,
a limited liability company, Defendants-Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-20-0001574)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and McCullen, JJ.)

        This appeal stems from a dispute involving a renewable wind energy project located in Kahuku, Oʻahu (the **Project**). Plaintiffs-Appellants Keep the North Shore Country (**KNSC**) and Kahuku Community Association (**KCA**) (together, **Appellants**) appeal from the Summary Disposition Order Affirming Agency Decision (**SDO**) and the Judgment, both entered on June 30, 2021, by the Circuit Court of the First Circuit.[1]  The Judgment was entered in favor of Defendants-Appellees Zoning Board of Appeals, City and County of Honolulu (**ZBA**); Director of the Department of Planning and Permitting (**DPP**), City and County of Honolulu (**Director**); and Na Pua Makani Power Partners (**NPM**), the developer of the Project. The SDO affirmed the ZBA's November 12, 2020 Findings of Fact, Conclusions of Law, and Decision and Order (**FOFs/COLs/Order**), which dismissed Appellants' appeal petitions (**Appeal Petitions**)

---

        [1]    The Honorable James H. Ashford presided.

challenging the Director's approvals of certain permits, waiver, and modifications (**Approvals**) related to the Project.

In this secondary appeal, Appellants contend that the Circuit Court erred by: (1) "affirming the ZBA's dismissal of Appellants' contested case proceeding in violation of [Hawaii Revised Statutes (**HRS**)] chapter 91"; (2) "affirming the ZBA's COLs []3, 10-13, 15, 20-21, 29-30, which concluded the Director's rules, as applied to the processing of the Director's Approvals, did not violate Appellants' right to procedural due process"; (3) affirming the ZBA's COLs 26-28, which "conclu[ded] that the governmental burden to provide any notice to Appellants and those similarly situated would be so great as to outweigh procedural protections for Appellants' property rights"; and (4) "concluding Appellants waived challenges to the ZBA's COL []2" based on application of Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b) rather than Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 72(g).

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Appellants' contentions as follows, and affirm.

## I.  Background

The following background is drawn primarily from the FOFs in the ZBA's FOFs/COLs/Order.[2]

> 1.  . . . [T]he Project . . . is comprised of eight turbines, all of which have already been erected on site.[3] The Project is located on two separate parcels of land leased by NPM and are referred to as Subproject A and Subproject B.  Of the eight turbines, Turbine Nos. 1 through 4 are located in Subproject A, and Turbine Nos. 6 through 9 are located in Subproject B.
>
> 2.  On or about November 29, 2016, NPM submitted a Conditional Use Permit ("CUP") Minor and Waiver Permit Application for . . . Subproject A . . . ("Subproject A CUP Application").

---

[2]    Appellants have not challenged the FOFs, which are therefore binding on appeal.  See Poe v. Haw. Labor Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) (ruling that an agency's unchallenged findings are binding on appeal).

[3]    In their opening briefs, the Director and NPM assert that the Project is now fully built and operational.

3. On January 20, 2017, the Director, without holding a public hearing, issued Findings of Fact, Conclusions of Law, and Decision and Order approving NPM's Subproject A CUP Application . . . , subject to various conditions. NPM was issued CUP No. 2016/CUP-69 ("Subproject A CUP") and Zoning Waiver No. 2016/W-63 ("Subproject A Zoning Waiver").

4. Pursuant to [DPP] Rules of Practice and Procedure ("DPP Rules") § 6-2, the Director mailed notice of her decision on the Subproject A CUP and Subproject A Zoning Waiver on January 20, 2017 to [NPM's] consultant.

5. No appeal was filed with the ZBA regarding the Subproject A CUP or Subproject A Zoning Waiver on or before February 21, 2017.

6. On May 8, 2019, NPM submitted a written request for minor modification of the Subproject A CUP and Zoning Waiver ("Subproject A CUP Minor Modifications Request") to modify the location and height of the four previously-approved wind turbines.

7. On June 7, 2019, the Director approved NPM's Subproject A CUP Minor Modifications Request, which were issued as Minor Modification Nos. 2019/MOD-34 and 201 9/MOD-35 (collectively, "Minor Modifications to Subproject A CUP").

8. Pursuant to DPP Rules § 6-2, the Director mailed notice of her decision on the Minor Modifications to Subproject A CUP on June 7, 2019 to [NPM's] consultant.

9. No appeal was filed with the ZBA regarding the Minor Modifications to Subproject A CUP on or before July 8, 2019.

10. On or about August 26, 2016, NPM submitted a Conditional Use Permit (Minor) Application for . . . Subproject B . . . ("Subproject B CUP Application").

11. On October 27, 2016, the Director, without holding a public hearing, issued Findings of Fact, Conclusions of Law, and Decision and Order approving NPM's Subproject B CUP Application . . . , subject to various conditions. NPM was issued CUP No. 2016/CUP-49 ("Subproject B CUP").

12. Pursuant to DPP Rules § 6-2, the Director mailed notice of her decision on the Subproject B CUP on October 27, 2016 to [NPM's] consultant.

13. No appeal was filed with the ZBA regarding the Subproject B CUP on or before November 28, 2016.

14. On May 8, 2019, NPM submitted a written request for minor modification of the Subproject B CUP ("Subproject B CUP Minor Modification Request").

15. On June 7, 2019, the Director approved NPM's Subproject B CUP Minor Modification Request, which was designated as Minor Modification No. 2019/MOD-36 ("Minor Modification to Subproject B CUP").

16. Pursuant to DPP Rules § 6-2, the Director mailed notice of her decision on the Minor Modification to Subproject B CUP on June 7, 2019 to [NPM's] consultant.

3

17. No appeal was filed with the ZBA regarding the Minor Modification to Subproject B CUP on or before July 8, 2019.

18. The Subproject A CUP, the Subproject A Zoning Waiver, and the Minor Modifications to Subproject A CUP, and the Subproject B CUP and Minor Modification to Subproject B CUP (collectively, the "DPP Approvals") have been at all times and continue to be available for review by the public at the DPP in its official files and record.

19. Both KNSC and KCA were consulted parties with respect to the NPM Project's Environmental Impact Statement ("EIS") process under HRS Chapter 343, during which time the Appellants provided input and comments regarding the environmental impacts of the NPM Project to the Hawaii Board of Land and Natural Resources ("BLNR"), the agency responsible for NPM's EIS.

20. The NPM Project's Final Environmental Impact Statement, dated June 2016 ("2016 FEIS"), was accepted by BLNR.

21. KNSC's President Gil Riviere and KCA submitted comments on the Project's EIS that were included in the 2016 FEIS.

22. The comments and responses in Appendix M to the 2016 FEIS comprise 707 pages, consisting of approximately 1,612 letters, petitions, emails, and/or signatures received during the EIS process conducted by BLNR, both for and against the Project.

23. The 2016 FEIS was included with the NPM's Project's Subproject A and Subproject B CUP Applications.

24. In September of 2015, prior to the submission of any of the applications for the DPP Approvals and prior to the Director's decisions to approve each of the DPP Approvals, KCA specifically identified the NPM Project and sought to amend the City and County of Honolulu's wind turbine ordinance to require CUP major permits.

25. Before KNSC filed the KNSC Appeal Petition, the DPP did not receive any direct communications from KNSC regarding any opposition to the NPM Project or objections to the DPP Approvals, and KNSC did not participate in any meetings with the Director or DPP regarding the DPP Approvals.

26. Appellants do not allege they requested under DPP Rules § 6-2 to receive from the Director notice of the Director's actions regarding any of the DPP Approvals or the NPM Project.

27. Appellants do not allege that before the KCA Application/Appeal Petition they submitted to DPP any opposition to the NPM Project or objections to the DPP Approvals.

28. The Director never received a request from KCA under DPP Rules § 6-2 to receive notice of the Director's actions regarding any of the DPP Approvals or the NPM Project.

29. The Director is not personally aware of any public comments that were made to DPP regarding the

4

> applications for the DPP Approvals and the Director did not impose any conditions in the DPP Approvals based on public comments that were made to DPP concerning the same.

(Footnote added.)

On December 23, 2019, KNSC filed its Appeal Petition challenging the Approvals. NPM and KCA filed applications to intervene in the proceeding on January 15, 2020, and February 7, 2020, respectively. The ZBA granted NPM's application and granted KCA's application in part, by treating KCA's application as a new appeal petition and then consolidating the KNSC and KCA appeals. The Director and NPM then filed motions to dismiss the consolidated appeals.

Following briefing and a hearing, the ZBA granted the motions to dismiss, and on November 12, 2020, adopted the FOFs/COLs/Order. The ZBA concluded that Appellants' Appeal Petitions were untimely as to each of the DPP Approvals, pursuant to ZBA Rules § 22-2 and Honolulu Land Use Ordinance (**LUO**) § 21-1.40, quoted <u>infra</u>. The ZBA also weighed the three due process factors applied in <u>In re Application of Maui Electric Co.</u> (<u>MECO</u>), 141 Hawaiʻi 249, 265, 408 P.3d 1, 17 (2017), and determined that the procedures followed by DPP in this case complied with constitutional due process requirements.

On November 24, 2020, Appellants appealed the ZBA's FOFs/COLs/Order to the Circuit Court. Following briefing and a hearing, the Circuit Court entered the SDO and the Judgment, affirming the FOFs/COLs/Order.

## II. Discussion

Appellants do not structure the argument section of their opening brief to track their points of error, and do not explain why each of the challenged COLs is wrong. <u>See</u> HRAP Rule 28(b)(7). Rather, Appellants make the primary argument that the ZBA's dismissal of their Appeal Petition as untimely denied them a contested case proceeding to review the Director's actions, thereby violating their property and due process rights.[4]

---

[4] In their first point of error, Appellants characterize the dismissal of their Appeal Petition as the dismissal of a contested case proceeding. <u>See</u> <u>supra</u>. In the argument section of their brief, however, Appellants assert that the dismissal of their Appeal Petition "violated

The Hawaiʻi Supreme Court has held that "as a matter of constitutional due process, an agency hearing is . . . required where the issuance of a permit implicating an applicant's property rights adversely affects the constitutionally protected rights of other interested persons who have followed the agency's rules governing participation in contested cases." MECO, 141 Hawaiʻi at 265, 408 P.3d at 17 (original emphasis omitted) (quoting Pele Def. Fund v. Puna Geothermal Venture, 77 Hawaiʻi 64, 68, 881 P.2d 1210, 1214 (1994)). "In other words, the court in Pele Defense Fund concluded that when the requirements of standing were met and the agency's rules were followed, an agency hearing was required when the challenged State action 'adversely affects the constitutionally protected rights' of others." Id. (emphasis added) (quoting 77 Hawaiʻi at 68, 881 P.2d at 1214). The supreme court has also held that "an appeal of a CUP issuance must take place within thirty days of the mailing or service of the director's decision, pursuant to LUO § 21-1.40 and as provided for in ZBA Rules § 22—2." Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City and Cnty. of Honolulu (CARD), 114 Hawaiʻi 184, 196, 159 P.3d 143, 155 (2007).

Here, the ZBA concluded that the Appeal Petitions were untimely under ZBA Rules § 22-2 and LUO § 21-1.40. Given that KNSC and KCA filed their Appeal Petitions on December 23, 2019, and February 7, 2020, respectively, the ZBA reasoned as follows:

> 1. DPP Rules § 6-2 governs notices of the Director's decisions, and states:
>
> > The director shall mail the written decision to the applicant and, upon request, shall give notice of the decision to other interested persons. The decision shall be available for review by the public at the department of planning and permitting.
>
> 2. DPP Rule § 6-2 and the posting of the Director's decisions in DPP's publicly available files provides constructive notice of the Director's decisions to members of the public.
>
> 3. DPP Rules § 6-2 also provides the public with a reasonable opportunity to request and obtain individual notice of the Director's decision.

---

Appellants' property rights by denying Appellants a contested case proceeding to review the Director's actions." (Emphasis added.)

. . . .

5. LUO § 21-1.40 provides that "[a]ppeals from the actions of the director in the administration of the provisions of the LUO shall be to the zoning board of appeals as provided by Section 6—1516 of the charter. Appeals shall be filed within 30 days of the mailing or service of the director's decision."

6. ZBA Rules § 22-2 provides:

§ 22-2 Mandatory appeal filing deadline. (a) A written petition appealing an action of the director must be received at the department of land utilization within 30 days of the date of mailing or personal service of the director's written decision; except that in the case of an appeal relating to the administration of the subdivision ordinance, the petition must be received within 15 days after receipt of the notice of the action.

(b) If the appeal is not timely filed, it shall be dismissed by the board upon the board's own motion or the motion of any party to the proceeding.

7. ZBA Rules § 22-7 provides:

<u>Waiver or suspension of rules</u>. The board may waive or suspend any procedure in chapter 22 for good cause, except that the mandatory appeal filing deadline and any other provisions mandated by law, shall not be waived.

8. ZBA Rules § 22-2 and 22-7 "establish a mandatory, exclusive, and short thirty-day period within which a director's action can be appealed to the ZBA; once the thirty-day period has passed, the director's action becomes final and binding." <u>Hoku Lele, LLC v. City and Cnty. of Honolulu</u>, 129 Hawaii 164, 168, 296 P.3d 1072, 1076 (App. 2013).

9. "It is undisputed that an appeal of a CUP issuance must take place within thirty days of the mailing or service of the director's decision, pursuant to LUO § 21-1.40 and as provided for in ZBA Rules § 22—2." [<u>CARD</u>], 114 [Hawaiʻi at] 196, 159 P.3d [at] 155 . . . .

10. The mandatory appeal deadline established under ZBA Rules § 22-2 for the Subproject A CUP and Subproject A Zoning Waiver was February 21, 2017.

11. The mandatory appeal deadline established under ZBA Rules § 22-2 for the Minor Modifications to Subproject A CUP was July 8, 2019.

12. The mandatory appeal deadline established under ZBA Rules § 22-2 for the Subproject B CUP was November 28, 2016.

13. The mandatory appeal deadline established under ZBA Rules § 22-2 for the Minor Modification to Subproject B CUP was July 8, 2019.

14. The LUO did not require that the Director hold a public hearing with respect to any of the DPP Approvals.

15. Based upon the record in this case, the written

memoranda of counsel, and the arguments presented at the hearing, the ZBA concludes that KCA's and KNSC's Appeal Petitions must be dismissed, pursuant to ZBA Rules § 22-2 and LUO § 21-1.40, because both KNSC's and KCA's Appeal Petitions were untimely filed with respect to each of the DPP Approvals.

Appellants do not contest COLs 5 through 9 and 14. Nor do they dispute the FOFs that support COLs 10 through 13 and 15. Rather, Appellants argue that the application of ZBA Rules § 22-2 and LUO § 21-1.40 in these circumstances, where Appellants did not receive actual, affirmative notice of the Approvals from the Director, violates their due process rights. This argument, in turn, relies primarily on the supreme court's ruling in Unite Here! Local 5 v. Department of Planning & Permitting (PACREP), 145 Hawaiʻi 453, 454 P.3d 394 (2019), which Appellants contend the ZBA misread.

In PACREP, the court held that Local 5's due process rights were violated when the DPP Director, without affirmative notice to Local 5, removed permit conditions ensuring that any conversion of hotel units in a condo-hotel project would comply with LUO requirements, when Local 5 had actively participated in the public hearing process for the permit and had advocated for the conditions. Id. at 467, 454 P.3d at 408. Specifically, the court stated:

> In these particular circumstances, we disagree that Local 5's failure to formally request notice under DPP Rules § 6.2 forecloses its right to challenge the Director's September 6 Letter [to the permit applicant removing the conditions]. Where the record demonstrates that the interested party advocated for certain conditions in a permit, the permit was approved with those conditions, and the permitting authority knew the importance of the conditions to the interested party, that interested party is entitled to heightened procedural protections regarding later decisions to modify that permit.

Id. at 467, 454 P.3d at 408.

The ZBA concluded in COL 20 that "PACREP does not support the Appellants' request for an exception to the mandatory appeal filing deadlines under ZBA Rules § 22-2 and LUO § 21—1.40 . . . ." The ZBA reasoned that here, unlike in PACREP, "the Director was not provided notice of the Appellants' interest in this case"; "[n]either of the Appellants participated in public hearings or proceedings leading up to the Director's

consideration of the underlying DPP Approvals"; and "neither Appellant advocated for conditions that were placed into the DPP Approvals and later removed without notice to their proponents." The Circuit Court reached the same conclusion based on similar reasoning.

Appellants argue that the PACREP ruling applies in these circumstances, because: (1) Appellants "actively engaged [the] [P]roject [by] participati[ng] in numerous community meetings, agency hearings, city council initiatives, and providing comments as part of the environmental review process under [HRS] chapter 343"; and (2) the Director "should have known Appellants were interested persons for whom notice was due in regard to the . . . [P]roject[,]" by "having reviewed the environmental review disclosure documents, which listed Appellants as consulted parties and commentators . . . ." Appellants also point out that they could not have participated in a public hearing on the Approvals because there were no such hearings.

We are not persuaded that Appellants have shown the "unique" and "particular circumstances" that gave rise to the "heightened procedural protections" afforded in PACREP. 145 Hawaiʻi at 467, 454 P.3d at 408. COLs 21 and 25 state:

> 21. The Director did not have actual notice of the Appellants' interest in the DPP Approvals or their objections to the Director's actions before the filing of their Appeal Petitions.
>
> . . . .
>
> 25. The Director did not receive any direct communications or actual notice from the Appellants regarding the Appellants' objections to the DPP Approvals.

Appellants contest COL 21, but they do not dispute the FOFS that support it, see FOFs 25-29, quoted supra, and their argument regarding what the Director "should have known" based on Appellants' participation in various non-DPP public meetings and processes, including the EIS process, relies in essence on a constructive notice theory. In that regard, Appellants have not established "unique" circumstances, as evidenced by FOF 22, which is undisputed and which found that "[t]he comments and responses

in appendix M to the 2016 [Final Environmental Impact Statement] comprise 707 pages, consisting of approximately 1,612 letters, petitions, emails and/or signatures received during the EIS process conducted by BLNR, both for and against the Project." It is certainly true that Appellants could not have participated in public hearings prior to the Approvals that never occurred, but they do not contend they were foreclosed from communicating directly with the Director regarding their objections to the Project.[5] Additionally, Appellants do not explain why they were not on constructive notice of the Approvals based on "the posting of the Director's decisions in DPP's publicly available files," pursuant to DPP Rules § 6-2.[6]

Absent the unique circumstances in PACREP, DPP Rules § 6-2 governed notice of the Director's decisions to Appellants. Under DPP Rules § 6-2 (quoted supra), the Director was required, upon Appellants' request, to give them notice of the Director's written decisions on permit applications related to the Project. Appellants do not dispute they knew such permits were required for the Project to commence,[7] and do not contend they requested notice of the Director's related decisions. On this record, we conclude that DPP Rules § 6-2 provided Appellants a reasonable opportunity to request and obtain actual, individual notice of the Director's decisions regarding the Project. In addition, Appellants were properly charged with constructive notice of the Director's decisions in DPP's publicly available files. We agree with the Circuit Court that in these circumstances, the

---

[5] Appellants also do not dispute COL 14, which concluded that "[t]he LUO did not require that the Director hold a public hearing with respect to the DPP Approvals."

[6] COL 2 states that "DPP Rule[s] § 6-2 and the posting of the Director's decisions in DPP's publicly available files provides constructive notice of the Director's decisions to members of the public." Appellants contend they did not waive any challenge to COL 2, but they do not provide any discernible argument as to why it is wrong.

[7] Indeed, it is undisputed that "in September of 2015, . . . KCA specifically identified the . . . Project and sought to amend the City and County of Honolulu's wind turbine ordinance to require CUP major[, rather than minor,] permits." The evidence before the ZBA showed that KCA believed construction of the Project would start in early 2016, and was aware that CUP minor permits required for the Project to commence did not involve public hearings.

requirements of due process were satisfied by Appellants' "opportunity to contest the Director's actions by filing an appeal before the mandatory appeal deadline as established by the [LUO] and ZBA Rules."

Accordingly, the Circuit Court did not err in affirming the ZBA's dismissal of Appellants' Appeal Petitions. We further conclude that the ZBA's COLs 3, 10-13, 15, 20-21, 26, and 30 are not wrong or, as applicable, clearly erroneous.[8] Appellants have waived any challenge to COL 2 by not presenting any discernible argument in their opening brief as to why it is wrong. See supra note 6.

### III. Conclusion

For the reasons discussed above, we affirm the Summary Disposition Order Affirming Agency Decision and the Judgment, both entered on June 30, 2021, by the Circuit Court of the First Circuit.

DATED: Honolulu, Hawaiʻi, March 27, 2025.

On the briefs:

Lance D. Collins and
Bianca K. Isaki
for Plaintiffs-Appellants-
Appellants.

Brad T. Saito,
Deputy Corporation Counsel,
City and County of Honolulu,
for Defendant-Appellee-
Appellee Director of the
Department of Planning and
Permitting

Jodi S. Yamamoto,
Jesse J.T. Smith, and
Bradley S. Dixon
(Yamamoto Caliboso, a Limited
Liability Law Company)
for Defendant-Appellee-
Appellee Na Pua Makani Power
Partners, LLC

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[8] In light of our conclusion that the requirements of due process were satisfied by Appellants' opportunity to file a timely appeal, we need not reach their challenge to COLs 27-29.